UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:22 CR 00387 |
| Plaintiff, | : | Judge Solomon Oliver |
| -vs- | : | |
| MICHAEL EDWARDS, | : | **MOTION TO DISMISS - DOUBLE JEOPARDY/COLLATERAL ESTOPPEL** |
| Defendant. | : | **(ORAL HEARING RESPECTFULLY REQUESTED)** |

Now comes the Defendant, Michael Edwards, by and through undersigned counsel, Justin M. Weatherly, Esq., and respectfully moves this Honorable Court for an order dismissing the indictment against the Defendant in part on the grounds that the prosecution of Count One, the death-enhancement of Count One constitutes double jeopardy, as prohibited by the Fifth Amendment to the United States Constitution for the reasons more fully explained in the attached Brief in Support, attached hereto and incorporated herein by reference.

Respectfully Submitted,

/s/ Justin M. Weatherly
JUSTIN M. WEATHERLY, Esq.
Reg. No. 0078343
Henderson, Mokhtari, & Weatherly
1231 Superior Avenue East
Cleveland, Ohio 44113
(216) 774-0000
jw@hmwlawfirm.com
Counsel for Defendant Michael Edwards

## BRIEF IN SUPPORT

### I. STATEMENT OF FACTS

On or about September 21, 2020, Geauga County Sheriffs responded to a suspected overdose that occurred at a home in Munson Township. The officers learned that the victim's source for Marijuana and Xanax was someone who lived near Euclid, Ohio and the suspected individual also sold fentanyl. After an investigation, officers received information that the victim had used drugs at the home of Dalonte Longs. Longs was known to receive pills from a source in Painesville, Ohio, and according to investigators, it was determined that Longs was selling drugs.

In January 2021, law enforcement completed surveillance at 683 Walnut Drive, Euclid, Ohio, which revealed that Dalonte Longs and others were completing transactions inside the home, in the driveway, and near 683 Walnut Drive, Euclid, Ohio. Law enforcement learned that Larry Crowder supplied fentanyl pills to Jarod Tomlinson, who then supplied the fentanyl pills to Ramse Dunn, who then supplied the fentanyl pills to Dalonte Longs and the Defendant herein.

On January 29, 2021, law enforcement applied for a search warrant to search 683 Walnut Drive, Euclid, Ohio, which was the known residence of Dalonte Longs. The search warrant was executed on February 3, 2021. During the execution of the search warrant, law enforcement located three individuals inside the home: Dalonte Longs, the Defendant, and Ramse Dunn. During the search, investigators seized, among other things, 100 blue counterfeit oxycodone pills (determined to be fentanyl); a Smith and Wesson 9-millimeter handgun with an extended magazine and multiple digital scales with drug residue. Dalonte

Longs, the Defendant, and Ramse Dunn were all subsequently placed into custody. The Defendant was interviewed on February 3, 2021 and admitted that the firearm found at Dalonte Longs' home during the search belonged to him. The Defendant admitted that the extended magazine belonged to him which he purchased from Viking Armory and admitted ten (10) pills of the total pills found in the home belonged to him.

On February 4, 2021, a search warrant was also executed at the home of Defendant's grandmother located at 1319 E. 69th Street, Cleveland, Ohio. The Defendant admitted to storing a pill press at his grandmother's home without her knowledge. On February 18, 2021, the Defendant, and four others were named in a one-count Indictment, in case number 1:21 CR 126, the Honorable Sara Lioi presiding, to which the Defendant entered a plea of Not Guilty. Count One charged Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 846. Count One charged that from about September 2020 to about February 8, 2021, in the Northern District of Ohio, and elsewhere, Larry Crowder, Jarod Tomlinson, Ramse Dunn, Dalonte Longs and the Defendant did knowingly and intentionally combine, conspire, confederate, and agree together and with each other and with diverse others to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and (b)(1)(C).

On February 24, 2022, after a review of what the Defendant believed was complete discovery as disclosed by the Government, the Defendant withdrew his plea of Not Guilty and entered a plea of Guilty to the Indictment without a plea agreement. At the time the plea was entered into, the Defendant was aware that the Government would be arguing for an

enhancement at the time of sentencing due to its belief that the Defendant was responsible for the overdose death of the victim herein. However, based on the evidence disclosed, the Defendant was not of the belief that the Government possessed substantial enough evidence to justify such an enhancement. The Court was informed during the change of plea hearing that at the time of sentencing both the Government and the Defendant would be presenting evidence in favor of, and against, the imposition of the overdose death enhancement given that the Defendant was not formally charged with that offense in the Indictment and did not agree to a plea in which it might have been included. (Please see Exhibit A, Transcript of Change of Plea Hearing, Case No. 1:21 CR 126). It is worth noting that the Presentence Investigation Report provided to undersigned counsel dated May 5, 2022, which relied on the exact same evidence as disclosed to the Defendant herein, states, "a review of the investigative reports did not reflect that the investigation concluded that Defendant was responsible for the fatal dose to the victim."

On June 6, 2022, and just over a week before the originally scheduled sentencing date, undersigned counsel was contacted by the Government, during which time it was disclosed that evidence intended for use at sentencing had previously not been disclosed to undersigned counsel. The evidence included police reports pertaining to the decedent, cell phone records of at least one co-defendant, and a cell phone extraction report pertaining to the Defendant herein using geolocation technology. This evidence was apparently in possession of the Government since the outset of the case but was withheld by the Government. Its lack of disclosure was discovered by the newly assigned AUSA. The replacement AUSA contacted undersigned counsel in an abundance of caution to ensure it had been disclosed only to

determine that it had not. Said evidence was then made available for counsel for defense on June 7, 2022, via electronic means. The Government was in possession of said evidence for over a year following the Defendant's indictment.

Despite the untimely disclosure of the evidence, the Defendant, by and through undersigned counsel, had reason to believe said evidence would still be presented at the Defendant's sentencing in case number 1:21 CR 126. In response, the Defendant filed a *Motion in Limine* on or about June 10, 2022, seeking to preclude the use of said evidence due to the untimeliness of its disclosure (Please See Exhibit B). After continuing the sentencing hearing to decide the issue, Judge Sara Lioi indicated during a status conference held via phone that she intended to grant the Defendant's *Motion in Limine* and preclude the Government from admitting the previously undisclosed evidence due in part to the fact that the Defendant herein entered into a change of plea without the opportunity to review said evidence. The Defendant's sentencing hearing was then quickly rescheduled, at which time the Government moved to withdraw its *Sentencing Memorandum* (Document Number 142) and all exhibits (the aforementioned and previously undisclosed evidence pertaining to the overdose enhancement).

Following the Court's decision to grant the Defendant's *Motion in Limine*, the Government decided not to seek any enhancement resulting from the overdose which triggered the federal investigation in case number 1:21 CR 126 and furthermore, chose not to present any evidence in support of the Defendant's culpability for said overdose, including that which had been previously disclosed prior to the Defendant's change of plea. On June 24, 2022, the Defendant, Michael Edwards, appeared before the Honorable Sara Lioi for the

purposes of sentencing. Judge Lioi sentenced the Defendant, Michael Edwards, to forty-six (46) months imprisonment on the one-count Indictment. Her sentence did not take into account any overdose enhancement.

On or about July 14, 2022, the Defendant was indicted pursuant to the above captioned matter. Count One (1), Distribution of Fentanyl, in violation of Title 21 United States Code, Section 841(a)(1) and (b)(1)(C) with an enhanced penalty under Title 21 United States Code, Section 841(b)(1)(C), Death Resulting from Use of a Controlled Substance. Count One (1) also alleges a forfeiture specification for any and all proceeds obtained as a result of the drug offense. Count Two (2) Receipt of a Firearm by a Person Under Indictment, in violation of Title 21 United States Code, Section 922(n) and 924(a)(1)(D) with a forfeiture specification for the firearm as to Count Two.

Both indictments as to Count One are seemingly identical but for the verbiage change of Count One in the second indictment. Further, Count Two, arises out of conduct from a separate time and place as to Count One (1).

According to the indictment, the date of offense for this current complaint was on or about September 21, 2020, which is the same date listed on the prior Indictment. There is no doubt that the charges in the matter at hand stem directly from the Defendant's arrest, search and seizure occurring on or about February 3, 2021, which also lead to the charges filed in case number 1:21 CR 126. Moreover, the evidence the Government intends upon using against the Defendant herein in its case in chief is the exact evidence intended for use in 1:21 CR 126. Only in the prior case, the Government was precluded from presenting much of that evidence due to its untimely disclosure. The Government now seeks to remedy that mistake

through the filing of the indictment herein. Though the Government obviously possessed this evidence for over a year after the Defendant's indictment in the prior case, it chose not to charge the Defendant with said evidence until July 14, 2022, exactly twenty (20) days after the Defendant had already pled and been sentenced in case number 1:21 CR 126.

In short, the Government investigated and eventually indicted the Defendant and his co-defendants as a result of the overdose death of Anthony Seaman in case 1:21 CR 126. During the discovery phase of this case, the Government produced some, but clearly not all, evidence indicating it believed the Defendant sold the fatal dose to the decedent, but never issued a superseding indictment officially charging the Defendant with the overdose enhancement. The Government first attempted to negotiate a plea wherein the overdose would be taken into account. Failing that, the Defendant entered into an open plea. During the change of plea, the Government informed the sentencing court that it intended upon presenting evidence sufficient to warrant an upward departure due to the overdose. The Defendant, having reviewed all evidence disclosed at that time, believed the Government did not possess sufficient evidence to warrant the overdose enhancement and similarly informed the Court of his intent to argue as much at sentencing.

Evidence was then disclosed to pre-trial services for purposes of a PSR, which concluded that there was insufficient evidence to hold the Defendant accountable for the overdose death. (Please See Exhibit C, pg. 6 of PSR, remaining report redacted). It was not until the week before the sentencing hearing was to occur when the Government finally disclosed the evidence it believes sufficiently proves the Defendant's guilt for the overdose death of the decedent. Had this evidence not been precluded from use by the prior court due

to untimely disclosure, the Government would have formally requested for an upward departure at sentencing resulting from the overdose. Only after the Defendant's *Motion in Limine* was granted did the Government abandon any effort to hold the Defendant accountable for the overdose death, choosing instead to procure the indictment herein.

Because the Defendant has already plead to, and been sentenced as a result of, evidence in the possession of the Government at the time of the Indictment in the prior case, the Defendant, by and through undersigned counsel, respectfully asserts that prosecution by the Government in the above captioned matter constitutes double jeopardy. The Government clearly had the means to prosecute the Defendant for all charges prior to his date of change of plea and sentence, and only failed to do so through its own neglect or incompetence. The only alternative is that it was done purposely. Such a failure cannot justify causing the Defendant herein to endure the gauntlet of yet another criminal prosecution when the charges in both cases, all based on evidence seized at the same date and time by the same agents of the Government, should have, and could have been brought at the same time. As such, the Defendant, by and through undersigned counsel, respectfully moves this Honorable Court to dismiss the indictment in the above captioned matter in its entirety pursuant to collateral estoppel provisions of the Double Jeopardy Clause.

## II. LAW AND ARGUMENT

The Fifth Amendment to the United States Constitution prohibits the prosecution of a defendant by the Government more than once for the same criminal act. It states in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb..." This right is guaranteed to all U.S. citizens through the Fourteenth Amendment to

the United States Constitution. Courts have established several "tests" to establish when and if the aforementioned rules of law should be applied. An analysis of each and every applicable "test," when applied to the facts and circumstances at hand, supports the conclusion that Count One of indictment in the above captioned matter should be dismissed in its entirety on grounds of double jeopardy.

The most commonly used "test," the Blockburger or "elements" test, supports dismissal of Count One of the indictment against the Defendant herein. Blockburger v. United States, 284 U.S. 299 (1932). Though Blockburger was decided by the United States Supreme Court, a summary of its holding was best described by the Ohio State Supreme Court in State v. Sparano, 19 Ohio St.3d 193 (1984), which stated:

> In the case of a single prosecution, **multiple punishments are prohibited if one offense is a greater or lesser included offense of the other**, unless the legislature clearly indicates an intention that the punishments are to be cumulative. Missouri v. Hunter, 459 U.S. 359 (1983); Harris v. Oklahoma, 433 U.S. 682 (1977); Blockburger v. United States, 284 U.S. 299 (1932). This standard is known as the "elements" test, because to determine whether two offenses stand in the relation of greater or lesser included offense, the statutory elements are compared, and if one offense contains all the elements of the other, plus additional elements, then it is the greater offense, and the other is the lesser included offense. If each offense, as defined by statute, contains an element which the other does not, the offenses are not related as greater and lesser included offenses. Sparano, *supra*, at 195 (emphasis added).

This test is applicable to the matter herein because the current complaint contains all of the elements of case number 1:21 CR 00126 with the additional element of an increased penalty for the victim's alleged overdose death caused by the Defendant. As such, the current indictment is the greater offense in relation to the lesser offense to which the Defendant herein already plead. The Defendant has already been punished for the lesser offense, and cannot, therefore, be punished for the current, greater offense. Pursuant to the "elements" test,

prosecution of, and punishment for, the case at hand, triggers the collateral estoppel provisions of the Double Jeopardy Clause constituting a violation of the Defendant's Fifth Amendment rights.

In both of the Defendant's cases, he was charged with the distribution of fentanyl, to wit, conspiracy to distribute and possession with intent to distribute fentanyl, and distribution of fentanyl involving a forfeiture specification. As such, the Defendant respectfully asserts that a strict application of the Blockburger test warrants dismissal of Count One, the death-results enhancement.

Though supportive of dismissal in the case at hand, the Blockburger test is not the only means by which successive prosecutions may be deemed impermissible. In both Ashe v. Swenson, 397 U.S. 436 (1970) and In re Nielsen, 131 U.S. 176 (1889) the United States Supreme Court held that when two offenses are sufficiently different to permit imposition of consecutive sentences, successive prosecutions will ultimately be barred when the second prosecution requires the re-litigation of factual and legal issues already addressed in the first.

The Ashe, *supra*, decision involved a second prosecution of a defendant already acquitted of robbing a participant in a poker game. At trial, it was established that the defendant was not present at the time of the robbery. The Court held that the principles of collateral estoppel embodied in the Double Jeopardy Clause barred the prosecution of the defendant for robbing the other participants in the game. The same rationale was used in the decision in Nielsen, *supra*, which dismissed the complaint against a Mormon charged with adultery after he had already been convicted of cohabiting with more than one wife over a two-year period.

> In both cases, strict application of the Blockburger test would have permitted imposition of consecutive sentence had the charges been consolidated in a single proceeding. Nonetheless, the Court in both cases held the separate offense to be the "same" for purposes of protecting the accused from having to "run the gauntlet" a second time. Ashe, *supra*, at 446, *quoting* Green v. United States, 355 U.S. 184 (1957); Brown v. Ohio, 432 U.S. 161 (1977).

It is likely the Government will attempt to argue that double jeopardy does not apply in the matter at hand pursuant to the Blockburger test due to the fact that the current indictment, though inclusive of the exact same charges as listed in case number 1:21 CR 00126, involves new and different evidence tying the Defendant to the overdose death. The overdose death, the Government may argue, constitutes wholly separate charges, thus failing to meet the lesser/greater included offense standards of the Blockburger test.

This argument fails for a number of reasons. First, the overdose death enhancement herein is simply an enhancement that raises the level of offense charged in the first case and only supports the assertion that the Defendant's original case was a lesser included offense to this current complaint. Secondly, even were this Honorable Court to disagree, double jeopardy would still apply due to the fact that all of the facts in case number 1:21 CR 00126 would have to be re-litigated in order to resolve the current matter. The Government cannot even attempt to establish the overdose death without relitigating the underlying offense of Distribution of Fentanyl.

Case number 1:21 CR 00126 involved an investigation into an overdose death resulting in the discovery of an alleged drug conspiracy. Several individuals were involved that could have been the supplier of the fatal dose to the victim. The Defendant pled guilty only to the conduct for which he was responsible, to wit, drug conspiracy. Those same facts surrounding the drug conspiracy must now be established by the Government **again** in order

to prove the underlying distribution charge as well as the overdose enhancement of the current case.  Due to the fact that these issues must be addressed for a second time, the principles of the decisions in Ashe and Nielsen, *supra*, apply, thus barring the prosecution of the current complaint on grounds of collateral estoppel provisions of the Double Jeopardy Clause.

      Further, the United States Supreme Court has addressed double jeopardy challenges pursuant to superseding indictments.  The Court stated, "the first touchstone for double-jeopardy concerns came by way of the superseding indictment. As a matter of common sense, this calls into mind [the Government's] lawful attempt to secure additional punishment for the same case. However, Petitioner could not be held to answer a superseding indictment, because he was already convicted and sentenced." Williams v. Forshey, No. 2:20-CV-5460, 2021 WL 1209838, at *5 (S.D. Ohio Mar. 31, 2021), report and recommendation adopted, No. 2:20-CV-5460, 2021 WL 2102504 (S.D. Ohio May 25, 2021) *citing* Green, *supra*.  While normally a superseding indictment would serve as a lawful manner to secure additional punishment for the same crime, in context of the instant matter, the additional punishment for which the Government seeks is for the same conduct in which the Defendant has already been convicted and sentenced.  Thus, the Defendant should not be held to answer to Count One of the Indictment, nor the enhanced penalty pertaining to Count One of the Indictment.

WHEREFORE, the Defendant, Michael Edwards, by and through undersigned counsel, Justin M. Weatherly, Esq., and for the foregoing reasons, respectfully moves this Honorable Court for an order dismissing Count One of the indictment against the Defendant in its entirety on the grounds that the prosecution of this case constitutes double jeopardy, as prohibited by the Fifth Amendment to the United States Constitution.

Respectfully Submitted,

/s/ Justin M. Weatherly
JUSTIN M. WEATHERLY, Esq.
Counsel for Defendant Michael Edwards

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic record. All other parties will be served by regular U.S. Mail, including the parties listed below. Parties may access this filing through the Court's Electronic System.

/s/ Justin M. Weatherly
JUSTIN M. WEATHERLY, Esq.
Counsel for Defendant Michael Edwards

Patrick Burke, Esq.
Assistant United States Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
(216) 622-3873
Patrick.Burke@usdoj.gov